## GEORGE H. GAMBLE'S ESTATE.

By the common law, on the marriage of a man with a woman seised in possession of an estate of inheritance, the husband became seised of an estate of freehold in her right. On the birth of issue capable of inheriting the estate, the husband then became tenant by the curtesy initiate, and from thence seised of the land for life in his own right. But his estate was not consummate until the death of the wife.

By the statute of descent and distribution in this state, the husband's right as tenant by the curtesy shall take place although there be no issue of the marriage, in all cases where the issue, if any, would have inherited.

This interest of the husband could be sold by him; or levied upon and sold by a judgment-creditor for his debts.

But by the Act of 1848, in relation to the rights of married women, this the husband cannot do. If the wife dies before the husband intestate, seised of an estate of inheritance, he will be entitled to enjoy the same during his life, in the same manner as a tenant by the curtesy consummate at common law. But during the life of the wife, he can neither sell, lease, charge, nor in any way affect her real estate, having no sort of interest therein; nor future interest, except as distributee under the intestate law. And such is the true construction of the Act of 1848.

*July* 15. ALL the facts necessary for a full understanding of the point decided by the Court, are sufficiently stated by the Judge who delivers the opinion.

The opinion of the Court was delivered by

KING, President.—This case comes before the Court on exceptions to the report of an auditor, appointed to distribute the proceeds of the real estate of George H. Gamble, deceased, sold under proceedings in partition. At the death of the decedent, in July 1845, his real estate descended to his eight children, one of whom, Augusta, on the 14th of October, 1848, intermarried with Charles D. Dickerson. On the 15th of December, 1849, a judgment was obtained by Daniel Price against Mr. Dickerson. Price now claims that the portion of the proceeds of her father's estate belonging to Mrs. Augusta E. Dickerson, shall be set aside during the life of her husband Charles D. Dickerson, in order that Price's judgment against him may be satisfied from the interest thereof. This claim is founded upon the supposition that Dickerson had such an interest in his wife's real estate, as was bound by the lien of Price's judgment, according to the true construction of the Act of the 11th of April, 1848, "to secure the rights of married women." This law declares " that every species and description of property, belonging to a single woman, shall continue to be the property of such woman, as fully after her marriage as before; and all property which shall

62

accrue to any married woman during coverture, by will, descent, deed of conveyance, or otherwise, shall be owned, used, and enjoyed by such married woman as her own separate property; and the said property, whether owned by her before marriage, or which shall come to her afterwards, shall not be subject to levy and exetion for the debts and liabilities of her husband, nor shall such property be sold, conveyed, mortgaged, transferred, or in any manner encumbered by her husband, without her written consent obtained, and duly acknowledged before one of the Judges of the Court of Common Pleas, that such consent was not the result of coercion on the part of her husband, but that the same was voluntarily given, and of her own free will."

Before the passage of this law, a judgment obtained against a husband bound the wife's land to the extent of his interest therein, either as tenant of the freehold in right of his wife, or as tenant by the curtesy initiate ; and if her land had been converted into money, under circumstances like the present, the judgment-creditor of the husband would have been entitled to the possession of the fund, and to take the produce of it during the husband's life, giving such security for the ultimate restoration of it to the wife, or her representatives, as might be directed by the proper Court. Lancaster Bank v. Stauffer, 10 Barr, 398. This is precisely what is asked of us now. If this request is acquiesced in by the Court, the effect will be a practical repeal of the provisions of the act of April, 1848, so far as respects the liability of the real estate of a married woman to the debts and responsibilities of her husband. This certainly would be alike inconsistent with the letter as with the spirit of the statute. It would be against the letter, because that declares, that the property of the wife "shall not be subject to levy and execution for the debts of the husband," and that it " shall not be encumbered in any manner by him without her consent." It would be against the spirit of the act, which was and is to guard the property of the wife against the effects of the misfortunes, the follies, or the vices of the husband, and to secure to her the enjoyment of her own estate, unless she voluntarily parts with or encumbers it for her own purposes.

A claim, therefore, so apparently at issue with the letter, principle, and policy of a statute law, would hardly have been made in a Court of justice, unless something could be found in the statute giving it some colour of plausibility. Accordingly, this is supposed to be discovered in the proviso to the 10th section of the act.

This section enacts, that the real estate of a married woman dying intestate "shall be distributed as is provided for by the intestate laws of this Commonwealth : *Provided that nothing* contained in this act shall be deemed or taken to deprive the husband of his right as tenant by the curtesy." This proviso, it is contended, from the generality of its expression, secures to a husband all his former rights in his wife's estates of inheritance, as tenant by the curtesy. If this position is sound, then this proviso makes the general provisions of the law inoperative, so far as respects the rights which the common law and our statute of descent and distribution formerly gave the husband in his wife's lands of inheritance. Let us briefly inquire what these rights were. Such an inquiry will enable us the better to ascertain what was meant by the legislature in employing the general words of the proviso of the 10th section of the act.

By the common law, on the marriage of a man with a woman seised in possession of an estate of inheritance, the husband became seised of an estate of freehold in her right; on the birth, however, of issue of the marriage, capable of inheriting the estate, the husband became tenant by the curtesy initiate, and from thence seised of the land as tenant for life in his own right. But his estate did not become consummate until the death of the wife; although it had, after issue born, such a commencement as was respected by the law for many purposes. After issue born, the husband alone did homage and became tenant to the lord paramount. And, if, under such circumstances, the husband made a feoffment of the land, and afterwards the wife died, the heir of the wife could not, during the life of the husband, recover the land from his feoffee : Co. Litt. 30 (a). A change, however, was made in the nature of the husband's curtesy interest by our statute of descent and distribution, which declared "that a husband's right as tenant by the curtesy shall take place, although there be no issue of the marriage, in all cases where the issue, if any, would have inherited." This assimilated our law, as to the husband's curtesy, to the custom of gavelkind, where a man might be tenant by the curtesy without having any issue born : Co. Litt. 30 (a). That our statute of descents and distributions dispensed with the birth of issue as a constituent to curtesy initiate, seems to be the opinion of the Court in The Bank *v.* Stauffer, 10 Barr, 399. If this is so, and I can see no reason to question the position, then, independent of the effect of the Act of the 11th of April, 1848, a husband can, imme-

diately after his marriage, sell his wife's land, and the purchaser will hold the land during the life of the husband. And of consequence, a purchaser of the husband's interest in the wife's land, at sheriff's sale, under a judgment against the husband, will obtain an interest to the same extent.

Was it then the intention of the legislature, in conserving the husband's curtesy in the event of the death of the wife *intestate*, seised of an estate of inheritance, to leave this species of estate untouched by the law and in full vigour, or was it the intention simply to give him an estate for life in the nature of an estate by the curtesy consummate in lands of inheritance, of which his wife died intestate? We are of opinion that the latter was the legislative intention, and for these reasons: First, because of the collocation of the proviso, which is found in a section prescribing the disposition of the wife's estate in case of her intestacy; indicating, therefore, that this provision in favour of the husband was part of a general scheme for the disposition of the wife's real estate, should she die without making any special disposition thereof. Second, because, by a previous section of the same law, power is given to a *feme covert* to dispose of *all* her estate by will, without any reservation of any supposed interest of her husband therein, either as tenant by the curtesy or otherwise. Now if, by the proviso of the 10th section, it was intended to protect the husband's curtesy in the wife's estate in the absolute sense of the term, the legislature would hardly have, in the same law, given her the power to dispose of the whole estate by will, and thus enabled her to defeat at her pleasure that estate which it is supposed they intended to conserve to the husband. Third, because a construction given to the 10th section of the Act, securing to the husband all his previous common and statute law rights in his wife's lands, as tenant by the curtesy initiate, would enable the husband to sell such lands and convey to the purchaser an estate therein for his, the husband's, life, or to encumber them by mortgage or judgment to that extent; which would exactly defeat the policy upon which the law securing the property of married women is founded, which was to protect the property of the wife against any act of her husband, done without her consent, tending to deprive her, during her life, of the use and enjoyment of her own estate. For these reasons, we are of opinion that the proviso of the 10th section of the Act of April 11, 1848, means no more than this, that if the husband survives his wife who dies intestate, seised

of real estate of inheritance, he shall be entitled to enjoy the same during his life, in the same manner as a tenant by the curtesy consummate at common law. That during the life of his wife, he can neither sell, lease, charge, or in any way affect, her real estate, having no sort of present interest therein, nor any future interest other than any distributee under the intestate laws, whose interest in the estate distributable under those laws comes into existence only on the death of the owner, without having made any other disposition of his estate. From these positions it follows that if the wife's real estate during coverture is turned into money by act of law, such as a sale consequent on a decree for partition, or in any other manner, neither the husband nor any of his judgment-creditors has any claim on the proceeds of such real estate, which belong absolutely and exclusively to the wife.

It will be seen that the judgment of the Court is founded on the construction given by them to the Act of the 11th of April, 1848, and not in reference to any supposed effect of the Act of the 22d of April, 1850, on this case. This act declares, "the true meaning of the Act of the 11th of April, 1848, is and hereafter shall be, that the real estate of any married woman in this Commonwealth shall not be subject to execution for any debt against her husband on account of any interest he may have or may have had therein as tenant by the curtesy, but the same shall be exempt from levy and sale for such debt during the life of the wife."

This section appears to have been passed to meet the case of Lefever v. Witmer, 10 Barr, 505, in which the Supreme Court held, that the act to secure the rights of married women does not divest the right of a creditor, who had commenced suit, to have satisfaction out of the husband's estate in the wife's lands; the Court there declining to give the act a retroactive operation against a creditor who had brought an action and incurred costs at the time of the enactment of this statute, when there was no law to forbid the pursuit, with a view to obtain a lien and satisfaction out of the husband's curtesy. This law of 1850 has no relation to the present case. Here the marriage of Augusta E. Gamble to Charles D. Dickerson, and the judgment against the latter, took place and was rendered after the Act of April 11, 1848, securing the rights of married women. We think we have shown Charles D. Dickerson never had any interest in his wife's land which he could dispose of by conveyance, or encumber by lien; and hence the Act of 1850, which gives a retroactive operation to the Act of 1848, has not, as the auditor seems to suppose, any relevancy to this

case, which stands on the simple ground of the true intent and meaning of the proviso of the 10th section of the Act of 1848, taken in connexion and considered with all the other parts of that law, and the policy that led to its enactment.

Exception overruled, and report confirmed.